# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DENNIS LITTELL,                         )
                                        )
            Plaintiff,                  )
                                        )
     v.                                 )          1:10CV152
                                        )
DIVERSIFIED CLINICAL SERVICES,          )
INC. and REX HOSPITAL, INC.,            )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION, ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant Rex Hospital Inc.'s ("Rex's") Motion to Dismiss (Docket Entry 13). For the reasons that follow, the Court should grant Rex's instant Motion in that the Court should dismiss Plaintiff's first and second claims for relief against Rex and Plaintiff's third claim for relief against both Diversified Clinical Services, Inc. ("DCS") and Rex.

### BACKGROUND

According to the Complaint, DCS "operates over 300 wound care facilities in conjunction with hospitals throughout the United States." (Docket Entry 8, ¶ 4.) The Complaint alleges that Plaintiff began working for DCS in September of 2006 at St. Luke Hospital in Fort Thomas, Kentucky. (Id., ¶ 6.) On September 1, 2007, after a request by Plaintiff, DCS allegedly transferred Plaintiff to the Raleigh, North Carolina, area where he began working "as the Program Director for [] DCS's operations in conjunction with [] Rex's facilities." (Id., ¶ 9.)

The Complaint alleges that Rex employee Diana Statler "made the decision to hire [P]laintiff [] for the [D]efendants' jointly run facility." (Id., ¶ 8.) Allegedly, "Defendants held [P]laintiff [] out to the public as an employee of [] Rex." (Id., ¶ 13.) Further, according to the Complaint, "[a]lthough normally [Plaintiff] reported to [] DCS regional vice president Belinda Blair, [] Rex employee Statler was [P]laintiff's de facto supervisor." (Id.) In support of this assertion, the Complaint alleges: that Statler "required [Plaintiff's] attendance at her supervisory meetings as 'one of her managers'[; that] [r]eports of various kinds – including internal DCS reports - were required to be sent to [] Statler[; and that] Statler assigned public relations and marketing staff to accompany [P]laintiff [] in order to report on his conduct and manage his work." (Id.) In sum, according to the Complaint, "Statler directed [P]laitiff['s] work and controlled his activities." (Id.)

Next, the Complaint asserts that, in March 2008, Plaintiff's physician diagnosed Plaintiff with spinal stenosis and referred Plaintiff to a neurosurgeon to evaluate surgical options. (Id., ¶ 16.) Plaintiff allegedly "informed his supervisors, Belinda Blair of [] DCS and Diana Statler of [] Rex, of his diagnosis and that he would probably be requiring back surgery in the near future and would be out for an extended period of time." (Id., ¶ 17.) According to the Complaint, at that time, "[b]oth Blair and Statler told [P]laintiff [] not to worry, that everything would be fine, and that they would make all necessary arrangements in regard to

-2-

his leave." (Id., ¶ 18.) However, the Complaint also alleges that, "[i]n March 2008 and at all relevant times, [] DCS informed all of its employees, including [Plaintiff], that they were not eligible for any protections under the Family [and] Medical Leave Act . . . (hereinafter, 'FMLA'), and that no DCS employees had coverage under the FMLA." (Id., ¶ 19.)

The Complaint asserts that Plaintiff "was scheduled for surgery . . . on April 16, 2008, and he [again] advised both Blair and Statler that he would need to take leave for the surgery, recuperation, and rehabilitation at that time." (Id., ¶ 20.) However, "[o]n April 11, 2008, [P]laintiff [allegedly] received a phone call from [] Blair [at which time] [s]he informed [P]laintiff that she had received a call from [] Statler, and that Statler and Rex 'wanted [Plaintiff] gone.'" (Id., ¶ 21.) The Complaint alleges that "Blair gave [P]laintiff the option to resign and be paid through April 30, 2008, or to be terminated effective April 11, 2008." (Id.) According to the Complaint, "[u]nder duress, [P]laintiff [] resigned." (Id., ¶ 22.)

As a result of the foregoing, the Complaint asserts claims against DCS and Rex for "FMLA Violations" (id., ¶¶ 23-36); "Equitable Relief under FMLA" (id., ¶¶ 37-43); and "Wrongful Discharge in Violation of Public Policy" (id., ¶¶ 44-53). Rex moves the Court to dismiss all of Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (See Docket Entry

-3-

13 at 1.) Plaintiff responded (Docket Entry 18) and Rex replied (Docket Entry 21).

DISCUSSION

A complaint fails to state a claim if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)) (emphasis added). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[1]

To the extent the Court must draw conclusions about matters of North Carolina law in evaluating the instant Motion, "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and

---

[1] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009).

-4-

persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). However, "[a] state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." Id.

Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ." Id. at 237. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

## A. Plaintiff's FMLA Claims

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided for" under the FMLA. 29 U.S.C. § 2615(a)(1). Here, Plaintiff alleges that "DCS and Rex unlawfully interfered with, restrained, and/or denied [his] exercise, or attempt to exercise his rights under the FMLA . . . by improperly indicating that they were not covered employers and that [he] had no FMLA rights" and by "terminating [his] employment." (Docket Entry 8, ¶¶ 30, 31.) To state an interference claim under the FMLA, Plaintiff must allege: (1) that he was an "eligible employee" under

-5-

the FMLA; (2) that his employer was covered under the FMLA; (3) that he was entitled to FMLA leave; (4) that he gave his employer adequate notice of his intention to take leave; and (5) that his employer denied him benefits to which he was entitled. See King v. Blanchard Mach. Co., No. 3:10-3219-MBS-PJG, 2012 WL 4586538, at *3 (D.S.C. Aug. 20, 2012) (unpublished) (citing Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006), and Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008)).

Rex contends that the Court should dismiss Plaintiff's FMLA claims against it because Plaintiff "has not alleged sufficient facts to establish that he is an 'eligible employee' of Rex under the [FMLA] . . ., and instead alleges facts that demonstrate that he is not an eligible employee of Rex." (Docket Entry 14 at 1.) Specifically, Rex argues that, because an "eligible employee" must have been employed "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12-month period," 29 U.S.C. § 2611(2)(A) (emphasis added), and the Complaint alleges that Rex only employed Plaintiff for seven months (see Docket Entry 8, ¶¶ 9, 21, 22), the Court should dismiss Plaintiff's FMLA claims against Rex. (See Docket Entry 14 at 4-6.) In response, Plaintiff argues that, because Plaintiff qualifies as an "eligible employee" as to DCS, and because Rex both meets the FMLA's definition of a covered "employer" and constitutes a joint employer with DCS, the FMLA applies against Rex regardless of whether Plaintiff qualifies

-6-

as an "eligible employee" as to Rex. (See Docket Entry 18 at 6-12.)[2] In other words, Plaintiff contends that, "once an employer is covered [under the FMLA], it must comply with non-interference an [sic] anti-retaliation provisions of the [FMLA], regardless of whether an employee qualifies as 'eligible' vis-a-vis a particular employing entity." (Docket Entry 18 at 7.)

In support of his position, Plaintiff highlights that, under the Regulations promulgated by the Department of Labor with respect to the FMLA, "[a] secondary employer is [] responsible for compliance with the prohibited acts provisions [of the FMLA] with respect to its jointly employed employees, whether or not the secondary employer is covered by FMLA." 29 C.F.R. § 825.106(e) (emphasis added).[3] That provision, however, on its face, only addresses whether the employer meets the applicable FMLA definition of that term - which is "any person engaged in commerce or in any industry affecting commerce who employs 50 or more employees for

_____

[2] For purposes of the instant Motion, Defendant does not dispute that Plaintiff has adequately alleged a joint employment relationship between DCS and Rex. (See Docket Entry 21 at 2 ("Even assuming for purposes of this motion that that DCS and Rex were joint employers (which Rex denies) . . . .").)  Moreover, the Parties appear to agree that, should a joint employment relationship have existed, DCS was Plaintiff's primary employer. (See Docket Entry 18 at 8; Docket Entry 21 at 3.)  Furthermore, there is no dispute that Rex otherwise meets the definition of an "employer" under the FMLA. (See Docket Entries 18, 21.)

[3] Although the FMLA does not address the issue of joint employment, see, e.g., Grace v. USCAR, 521 F.3d 655, 663 (6th Cir. 2008) ("The FMLA itself is silent about the issue of joint employment."), the Code of Federal Regulations provides that "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA," 29 C.F.R. § 825.106(a).

-7-

each working day during each of the 20 or more calendar workweeks in the current preceding year," 29 U.S.C. § 2611(4)(A) - as opposed to whether the <u>employee</u> meets the definition of an "eligible employee" of such an employer. Plaintiff does not cite, and independent research has not revealed, authority interpreting the FMLA in the manner Plaintiff promotes here.[4]

Plaintiff relies heavily on <u>Grace v. USCAR</u>, 521 F.3d 655 (6th Cir. 2008), to support his position. (<u>See</u> Docket Entry 18 at 10-12.) However, the <u>Grace</u> court declared the plaintiff an "eligible employee" as to the employer in question because that employer was a successor in interest to a previous employer, such that the total amount of the plaintiff's employment between the two exceeded the 12-month threshold required under the FMLA. <u>Grace</u>, 521 F.3d at 671-76. In fact, the <u>Grace</u> court noted that, under the FMLA, "[t]he term 'employer' [] includes 'any successor in interest of an employer.'" <u>Id.</u> at 671 (quoting 29 U.S.C. § 2611(4)(A)(ii)(II)). Because, here, the Complaint does not identify Rex as a successor

---

[4] <u>Salgado v. CDW Computer Ctrs., Inc.</u>, No. 97 C 1975, 1998 WL 60779, at *3-4 (N.D. Ill. Feb. 5, 1998) (unpublished), appears to present the most analogous set of facts. In that case, the secondary employer defendant contended that because it did not specifically employ the defendant for the 12-month period, he failed to qualify as an "eligible employee" under the FMLA. However, in <u>Salgado</u>, the secondary employer did have a relationship with the plaintiff as a temporary employee for a period of time exceeding 12 months. Thus, the court looked to the definition of "employ" - which includes "'to suffer or permit to work,'" <u>id.</u> at *3 (quoting 29 U.S.C. § 203(g)) - and concluded that the plaintiff qualified as an eligible employee of the secondary employer. <u>Id.</u> at *4. Here, where Plaintiff does not allege any relationship with Rex spanning the 12-month period, <u>Salgado</u> offers no assistance to Plaintiff.

-8-

to DCS, or allege any facts that would allow any such inference, Plaintiff's reliance on <u>Grace</u> is misplaced. Otherwise, Plaintiff simply cites authority establishing the proposition that, in certain circumstances, a joint employment relationship can exist. (<u>See</u> Docket Entry 18 at 12 (citing <u>Herron v. Baptist Mem'l Healthcare Corp.</u>, No. 2:06CV114-P-A, 2007 WL 2579972 (N.D. Miss. Sept. 4, 2007) (unpublished), <u>Carstetter v. Adams Cnty. Transit Auth.</u>, No. 1:06-CV-1993, 2008 WL 2704596 (M.D. Pa. July 8, 2008) (unpublished), and <u>Schultz v. Capital Int'l Sec., Inc.</u>, 460 F.3d 595 (4th Cir. 2006)).) Rex does not question that proposition as a general matter and the cited cases do not shed light on the more immediate issue of whether the instant facts would render Rex liable under the FMLA.

Under these circumstances, the Court should construe the FMLA to require a plaintiff to qualify as an "eligible employee" specifically as to the employer sued. <u>See generally</u> <u>Brown v. Cook Cnty., Ill.</u>, No. 10 C 2689, 2012 WL 6055318, at *3 (N.D. Ill. Dec. 6, 2010) (unpublished) ("[E]ven if there is a joint employer relationship, each of the defendant employers must have its own relevant contacts with the plaintiff employee for purposes of the FMLA."). Plaintiff's contrary interpretation would render secondary employers subject to suit after a single day's employment and thus would "threaten . . . the delicate statutory balance that Congress sought to achieve" with the FMLA, <u>Plumley v. Southern Container, Inc.</u>, 303 F.3d 364, 372 (1st Cir. 2002). The Court should decline to adopt such an interpretation.

In anticipation of this possible conclusion, Plaintiff argues that Rex should be estopped from challenging his FMLA eligibility because, after he informed both of his supervisors of the need to take FMLA leave, "[t]hey did not request any further information, but told him everything would be ok, and that they would make arrangements" (Docket Entry 18 at 13) and because, under 29 C.F.R. § 825.110, "once a request [to take FMLA leave] is made, the employer has an affirmative duty to confirm or deny eligibility" which, if not performed, results in estoppel (id.). Plaintiff's argument does not establish grounds to estop Rex from pursuing its foregoing argument against liability under the FMLA.

The regulation upon which Plaintiff relies - 29 C.F.R. § 825.110(d) - was amended to remove the language Plaintiff cites after numerous courts, including courts within the Fourth Circuit, found that it impermissibly expanded liability beyond the statutory language and was thus invalid. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 506-07 (3d Cir. 2009); Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791 (11th Cir. 2000); Dormeyer v. Comerica Bank, 223 F.3d 579 (7th Cir. 2000); Seaman v. Downtown P'ship of Baltimore, Inc., 991 F. Supp. 751, 754 (D. Md. 1998); Wolke v. Dreadnought Marine, Inc., 954 F. Supp. 1133, 1135 (E.D. Va. 1997). To the extent Plaintiff contends that the prior version of the regulation remains in effect as to him because its repeal occurred after the underlying events, this Court should join those well-reasoned decisions and declare the regulatory provision on which Plaintiff relies invalid.

-10-

Accordingly, because, on the face of the Complaint, Plaintiff does not qualify as an "eligible employee" under the FMLA as to Rex and because Plaintiff's estoppel argument lacks merit, the Court should grant Rex's instant Motion in that the Court should dismiss Plaintiff's first and second claims for relief against Rex.

### B. Wrongful Discharge in Violation of Public Policy

Plaintiff's claim for "Wrongful Discharge in Violation of Public Policy" seeks to impose liability upon Defendants because, "[i]t is the public policy of North Carolina, as stated in [N.C. Gen. Stat. § 143-422.2 of the North Carolina Equal Employment Practices Act ('NCEEPA')], to protect and safeguard the right of all persons to hold employment without discrimination on the basis of handicap." (Docket Entry 8, ¶ 47.) Rex contends that, because a claim for wrongful discharge in violation of public policy based on a constructive discharge "is not recognized under North Carolina law, [that claim] . . . should [] be dismissed in its entirety as to both Defendants." (Docket Entry 14 at 1.) In response, Plaintiff argues that the situation at hand is more akin to an actual discharge in that Rex and/or DCS "decided the relationship will be terminated, and [] took affirmative steps to see that the relationship ended." (Docket Entry 18 at 15.) Alternatively, Plaintiff argues that, should the Court interpret the Complaint as alleging a constructive discharge, "North Carolina courts would recognize such circumstances as being protected under [the] [wrongful discharge in violation of public policy] framework." (Id.)

-11-

The Complaint explicitly alleges that Plaintiff resigned. (See Docket Entry 8, ¶¶ 21, 22.) Accordingly, regardless of whether or not said resignation occurred in the face of the threat of immediate termination (see id.), Plaintiff has not alleged an actual discharge. See Blair v. Randolph Cnty. Bd. of Educ., No. COA10-605, ___ N.C. App. ___ (table), 713 S.E.2d 793 (table), 2011 WL 2206690, at *3 (June 7, 2011) (unpublished) (noting that "plaintiff's claim shows she was not discharged" where "[p]laintiff allege[d] she was given the ultimatum of voluntary resignation or immediate termination" and "chose to resign"). Moreover, the Complaint does not allege a "constructive discharge" as North Carolina courts have interpreted that term in similar contexts.

"In general, evidence establishing constructive discharge 'must demonstrate that the employer deliberately made working conditions intolerable and thereby force[d] [the plaintiff] to quit.'" Doyle v. Asheville Orthopaedic Assocs., P.A., 148 N.C. App. 173, 177, 557 S.E.2d 577, 579 (2001) (quoting Graham v. Hardee's Food Sys., Inc., 121 N.C. App. 382, 385, 465 S.E.2d 558 (1996)); see also Corbett v. North Carolina Div. of Motor Vehicles, 190 N.C. App. 113, 660 S.E.2d 233 (2008) ("Constructive discharge is recognized as grounds for jurisdiction over an employee's claim where an employee alleges his or her choices are limited to working under conditions in violation of the law or be deemed to have resigned."). The Complaint does not allege that Defendants took any actions making Plaintiff's working conditions intolerable or that Defendants forced Plaintiff to work under conditions in

violation of the law. (See Docket Entry 8.) Simply put, it does not appear that the Complaint alleges facts that North Carolina law would recognize as a discharge in any respect and, thus, Plaintiff's state law claim cannot stand. See Blair, 2011 WL 2206690, at *3 ("[The] [p]laintiff alleges she was given the ultimatum of voluntary resignation or immediate termination. She chose to resign. Because the facts as alleged by [the] plaintiff, when treated as true, are insufficient to support claims . . . based on wrongful discharge in violation of public policy as set forth in [NCEEPA], we affirm the trial court's grant of [the] defendant's 12(b)(6) motion."); Gravitte v. Mitsubishi Semiconductor Am., Inc., 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 (1993) ("If [the] plaintiff voluntarily resigned [the] defendant's employ, she cannot bring a claim for wrongful discharge.").

Moreover, even if a resignation tendered in lieu of firing constituted a form of "constructive discharge" within the meaning of North Carolina law, such a "constructive discharge" does not support a claim for wrongful discharge in violation of public policy under North Carolina law. Analysis of this issue must begin with Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 381 S.E.2d 445 (1989), the seminal case recognizing a public policy exception to North Carolina's at-will employment doctrine. The plaintiff in that case, "a long-distance truck driver," id. at 173, 381 S.E.2d at 445, alleged that the defendant: "required [the] plaintiff, and other drivers, to violate the [United States Department of

-13-

Transportation's] regulations by driving for periods of time in excess of that allowed," id.; informed the plaintiff "that he would have to falsify the logs required by the regulations to show that [the] defendant was in compliance with the regulations," id.; and, upon his refusal to violate the regulations, told the plaintiff "that his pay would be reduced to at least fifty percent," id.  The Coman court, without explicitly discussing constructive versus actual discharge, found those circumstances "tantamount to a discharge," id. at 174, 381 S.E.2d at 446, and allowed the plaintiff's claims to proceed past the motion to dismiss stage.[5]

Although at least one subsequent North Carolina Supreme Court case has characterized (in dicta) the circumstances in Coman as a "constructive discharge," Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 570, 515 S.E.2d 438, 440 (1999), a series of North Carolina Court of Appeals decisions that followed Coman clearly express the view that, at least as a general proposition, North Carolina law did not recognize a claim for wrongful discharge based on constructive, as opposed to actual, discharge, see Doyle, 148 N.C. App. at 174, 557 S.E.2d at 577 ("North Carolina has not explicitly recognized constructive discharge in the context of employment as an independent basis for recovery."); Graham, 121 N.C. App. at 385, 465 S.E.2d at 560 ("North Carolina courts have yet to adopt the employment tort of constructive discharge.").

---

[5] Notably, the Complaint in this case does not allege that Defendants required Plaintiff to violate the law on pain of intolerable working conditions and thus Plaintiff must look beyond the specific reach of Coman.

-14-

Moreover, left to interpret the state of North Carolina law in 2002, the United States Court of Appeals for the Fourth Circuit stated in an unpublished opinion:

> [The plaintiff] claims that the narrow exception to the employment-at-will doctrine for wrongful discharge carved out by North Carolina courts demonstrates a shifting of the tide toward private action rights under the statute, and she argues there is no "rational distinction" between claims for constructive discharge and wrongful discharge claims. We disagree. As the district court found, North Carolina courts and federal courts applying North Carolina law have made that very distinction, by finding repeatedly that no private cause of action exists for retaliation, hostile work environment, disparate treatment, <u>or constructive discharge in violation of public policy</u>.

<u>Jones v. Duke Energy Corp.</u>, 43 F. App'x 599, 600 (4th Cir. 2002) (emphasis added).

Since the Fourth Circuit's <u>Jones</u> decision, North Carolina courts have not taken any action which would indicate that Plaintiff can maintain a claim for wrongful discharge in violation of public policy based on any form of "constructive discharge" alleged in the Complaint. The North Carolina Court of Appeals made perhaps its clearest statement on the matter in <u>Beck v. City of Durham</u>, 154 N.C. App. 221, 573 S.E.2d 183 (2002). As this Court has noted (via United States District Judge James A. Beaty, Jr.):

> In *Beck*, the North Carolina Court of Appeals, citing *Graham*, affirmed the dismissal of the plaintiff's claim for wrongful constructive discharge, holding that "North Carolina courts have yet to adopt [the] tort [of wrongful constructive discharge]." [*Beck, 154 N.C. App.*] at 231, 573 S.E.2d at 190 (citing *Graham*, 121 N.C. App at 385, 465 S.E.2d at 560).

<u>Gallimore v. Newman Mach. Co., Inc.</u>, 301 F. Supp. 2d 431, 453 (M.D.N.C. 2004).

-15-

Further, in <u>Whitt v. Harris Teeter, Inc.</u>, 359 N.C. 625, 614 S.E.2d 531 (2005), the North Carolina Supreme Court declined to extend <u>Coman</u> when it overturned a North Carolina Court of Appeals decision holding that "North Carolina recognizes the claim of wrongful discharge in violation of public policy where termination is constructive," <u>Whitt v. Harris Teeter</u>, 165 N.C. App. 32, 41, 598 S.E.2d 151, 157 (2004).[6]  Finally, post-<u>Whitt</u>, the North Carolina Court of Appeals again affirmed the dismissal of a claim based on a constructive discharge, albeit in an unpublished opinion.  <u>See</u> <u>Clark v. United Emergency Servs., Inc.</u>, No. COA07-592, 189 N.C. App. 787 (table), 661 S.E.2d 55 (table), 2008 WL 1723229, at *4 (Apr. 15, 2008) (unpublished) ("Since the tort of constructive

_____

[6] In so doing, the North Carolina Supreme Court held as follows: "For the reasons stated in the dissenting opinion, the decision of the Court of Appeals is reversed." <u>Whitt</u>, 359 N.C. at 625, 614 S.E.2d at 532.  The dissenting judge in the Court of Appeals' decision had expressed the following alternate theories for rejecting the plaintiff's claim: (1) that constructive discharge generally does not fall under the public policy exception of the at-will employee doctrine recognized in <u>Coman</u>, <u>Whitt</u>, 165 N.C. App. at 50, 598 S.E.2d at 162; or (2) "even if the constructive discharge claim was cognizable in North Carolina or should our Supreme Court hold it to be so, there was not sufficient evidence as to the element of deliberateness for the claim to survive a motion for directed verdict at the close of all of the evidence," <u>id.</u> at 50, 598 S.E.2d at 163.  The failure of the North Carolina Supreme Court to clarify whether it endorsed one (and, if so, which one) or both of the alternative prongs of the dissenting opinion leaves some ambiguity as to the state of North Carolina law in this context.  That ambiguity, however, does not inure to Plaintiff's benefit.  <u>See generally</u> <u>Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.</u>, 506 F.3d 304, 314 (4th Cir. 2007) ("Moreover, absent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." (internal brackets, ellipses, and quotation marks omitted)).

-16-

discharge is not recognized in North Carolina, the trial court did not err when it dismissed [the] plaintiff's complaint as to her constructive discharge claim.").

The vast majority of federal district courts addressing the issue have construed North Carolina law in similar fashion. See Baldwin v. Tradesmen Int'l, Inc., No. 5:12-cv-00116-FL, 2013 WL 1192314, at *9 (E.D.N.C. Mar. 22, 2013) (unpublished) ("[T]he court finds that constructive discharge cannot serve as a basis for plaintiffs' public policy claim, and it will be dismissed . . . ."); Jackson v. Weight Watchers Int'l, Inc., No. 3:10cv363, 2011 WL 1843223, at *3 (W.D.N.C. May 16, 2011) (unpublished) ("As discussed at the hearing, defendants have correctly characterized North Carolina law as not recognizing a demotion or constructive discharge as an actionable basis for a wrongful discharge claim under the NCEEPA. It is only actual discharges that are actionable."); Parker v. Miller & Long Constr. Co., Inc., No. 5:10-CV-282-D, 2010 WL 5478466, at *2 (E.D.N.C. Dec. 30, 2010) (unpublished) ("[T]o the extent that [the plaintiff] seeks relief under North Carolina law for the tort of wrongful discharge in violation of public policy, the claim fails. Notably, [the plaintiff] admits in his complaint that he was not discharged and, instead, asked 'to be laid off . . . .' Under North Carolina law, the tort of wrongful discharge in violation of public policy requires a discharge, and a constructive discharge does not suffice." (internal citation omitted)); Riepe v. Sarstedt, Inc., No. 5:09-CV-00104, 2010 WL 3326691, at *5 (W.D.N.C. Aug. 23, 2010)

(unpublished) ("[T]o permit [the] [p]laintiff to proceed under th[e] [Coman] analysis, the [c]ourt would be forced to ignore the numerous North Carolina cases following that decision which have held that an employee must allege actual discharge from employment to state a claim for violation of public policy. . . . [U]ntil North Carolina courts expressly recognize constructive discharge for claims of wrongful discharge in violation of public policy, this Court will also refuse to do so."); Williams v. Target Corp., No. 3:10CV136-RJC-DSC, 2010 WL 2650847, at *3 (W.D.N.C. Apr. 22, 2010) (unpublished) ("North Carolina law clearly does not support a wrongful termination claim based on constructive discharge."), recommendation adopted, 2010 WL 2650845 (W.D.N.C. July 1, 2010) (unpublished); Gallimore, 301 F. Supp. 2d at 454 ("[B]ecause the North Carolina courts have declined to recognize a public policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges, this Court declines to do so as well."); Johnson v. Food Lion, LLC, No. 1:02CV00904, 2003 WL 2741156, at *4 (M.D.N.C. Nov. 17, 2004) (Osteen, Sr., J.) (unpublished) ("[P]ublic policy considerations only come into view where there is an actual termination, not a mere constructive discharge. Plaintiff's alleged constructive discharge is insufficient as a matter of law to support a claim for wrongful discharge. Therefore, his wrongful discharge claim will be dismissed.").

Two decisions out of the Western District of North Carolina have reached the opposite result. In McHan v. Cherokee Cnty., No.

2:06CV21, 2006 WL 3694540 (W.D.N.C. Dec. 13, 2006) (Thornburg, J.)

(unpublished), the court noted:

> The difference between a claim of wrongful discharge and
> a claim of constructive discharge appears to be a game of
> semantics played out among the North Carolina courts.
> However, it is clear that, while North Carolina remains
> undecided about its views toward the separate tort action
> of constructive discharge, it surely recognizes a claim
> of wrongful discharge based upon the theory of
> constructive discharge due to a public policy violation.
> *See Coman, Graham, Whitt.*

Id., 2006 WL 3694540, at *3. The McHan court went on to find:

> Plaintiff has sufficiently plead the elements of a
> wrongful discharge claim based upon the theory of
> constructive discharge, which has been recognized by both
> North Carolina courts and the Fourth Circuit [in *E.E.O.C.
> v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992)
> and *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255
> (4th Cir. 1985)], by alleging the requisite public policy
> violation . . . and deliberateness on the part of her
> employer to establish her claim.

Id. Similarly, in Cox v. Indian Head Indus., Inc., 123 F. Supp. 2d

892, 900 (W.D.N.C. 2000) (Thornburg, J.) (unpublished), the court

stated:

> Defendants argue that [] a common law claim [for wrongful
> discharge] is recognized only where the plaintiff has
> been terminated, not constructively discharged. However,
> North Carolina courts have recently recognized that a
> plaintiff could state a claim for wrongful discharge
> based on constructive discharge following unwanted sexual
> advances, touching and harassment. *Graham []*, 121 N.C.
> App. [at] 386, 465 S.E.2d [at] 561 [].

Cox, 123 F. Supp. 2d at 892.

The North Carolina authority cited by McHan and Cox as

justification for allowing a claim for constructive discharge in

violation of public policy to proceed - Coman, Whitt, and Graham -

does not support the view that North Carolina law recognizes such

-19-

a claim in this context. First, as previously noted, North Carolina appellate courts have declined to read <u>Coman</u> as recognizing a general wrongful constructive discharge in violation of public policy claim. Further, the <u>McHan</u> court itself observed that <u>Whitt</u> failed to clarify the state of North Carolina law regarding constructive discharge:

> In its *per curiam* opinion, the Supreme Court of North Carolina stated, "[f]or the reasons stated in the dissenting opinion, the decision of the Court of appeals is reversed." *Whitt*, [359 N.C. at 625, 614 S.E.2d at 532]. Looking to the dissenting opinion filed by the North Carolina Court of Appeals' majority opinion in *Whitt*, it is clear that the dissent was based on two reasons[:] that 1) North Carolina does not recognize constructive discharge as a separate tort action; and 2) even were North Carolina to recognize such a doctrine, the facts of the case did not support the claim. *See Whitt v. Harris Teeter, Inc.*, 165 N.C. App. 32, 43-44, 598 S.E.2d 151, 159 (2004) (McCullough, J., dissenting).
>
> Whether the affirmation by North Carolina's Supreme Court is based upon one or both of the reasons stated in the dissent is unclear. That Court may have endorsed the dissent's idea that North Carolina has yet to recognize claim of constructive discharge, or it may have simply believed that the record in *Whitt* was insufficient to support a claim of constructive discharge. Whatever the case may be, it is clear to the undersigned that the Supreme Court's *per curiam* opinion provides minimal guidance and should not be relied upon exclusively in disposing of this Plaintiff's constructive discharge claim.

<u>McHan</u>, 2006 WL 3694540, at *2.

Moreover, this Court (per Judge Beaty) has previously addressed the insufficiency of <u>Cox</u>'s citation to <u>Graham</u> (particularly in light of <u>Beck</u>) as support for the conclusion that North Carolina law recognizes a claim for wrongful constructive discharge in violation of public policy:

> [The] [p]laintiff . . . cites *Cox* [] for the proposition
> that North Carolina courts do recognize a claim for
> constructive discharge in violation of public policy. In
> *Cox*, the district court, citing *Graham* [], held that
> "North Carolina courts have recently recognized that a
> plaintiff could state a claim for wrongful discharge
> based on constructive discharge following unwanted sexual
> advances." *Cox*, 123 F. Supp. 2d at 900 (citing *Graham*).
>
> Although [the] [p]laintiff correctly cites *Cox* as
> standing for the proposition that North Carolina
> recognizes claims for wrongful constructive discharge,
> the North Carolina Court of Appeals in *Graham* [], on
> which *Cox* relies, specifically stated "that North
> Carolina courts have yet to adopt the employment tort of
> constructive discharge," and the court in *Graham*
> therefore merely assumed arguendo, but did not hold, that
> the tort existed. *Graham*, 121 N.C. App. at 385, 465
> S.E.2d at 560. Furthermore, *Beck []*, cited by [the]
> [d]efendants, is directly on point. In *Beck*, the North
> Carolina Court of Appeals, citing *Graham*, affirmed the
> dismissal of the plaintiff's claim for wrongful
> constructive discharge, holding that "North Carolina
> courts have yet to adopt [the] tort [of wrongful
> constructive discharge]." *Id.* at 231, 573 S.E.2d at 190
> (citing *Graham*, 121 N.C. App at 385, 465 S.E.2d at 560).
> Thus, the relevant North Carolina case law directly
> contradicts the holding in *Cox*. The Court also notes
> that the decisions from this district also uniformly
> contradict the holding in *Cox* . . . . This Court holds
> that, inasmuch as *Cox* held that constructive-discharge
> claims are cognizable under North Carolina law, that
> decision is contrary to North Carolina and Middle
> District case law, and this Court therefore declines to
> follow the decision in *Cox.*

Gallimore, 301 F. Supp. 2d at 453-54.  Finally, the two Fourth

Circuit cases cited in McHan to show that North Carolina law

permits constructive discharge to serve as a predicate for public

policy-based tort claims - Clay Printing and Bristow - provide

insufficient support for that position because both address

constructive discharge claims in the context of a federal statute

rather than under North Carolina law.

In sum, neither rulings by the North Carolina Supreme Court nor interpretations of North Carolina law by the Fourth Circuit recognize a cause of action of the sort Plaintiff proposes to pursue under facts as alleged in the Complaint. Moreover, decisions from the North Carolina Court of Appeals, as well as decisions by other federal district courts, counsel against construing North Carolina law in such a fashion. Under these circumstances, the Court should dismiss Plaintiff's claim for "Wrongful Discharge in Violation of Public Policy."

<u>CONCLUSION</u>

The Complaint fails to allege facts that would permit a finding that Plaintiff qualified as an eligible employee as to Rex under the FMLA. In addition, North Carolina law does not recognize a claim for wrongful discharge in violation of public policy under the facts alleged in the Complaint.

**IT IS THEREFORE RECOMMENDED** that Rex's Motion to Dismiss (Docket Entry 13) be granted in that the Court should dismiss Plaintiff's first and second claims for relief against Rex and Plaintiff's third claim for relief against both DCS and Rex.

**IT IS ORDERED** that, because Plaintiff's first and second claims for relief against DCS remain, the Clerk should set a date for an initial pretrial conference.


/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 10, 2013


-22-